# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

___

| | |
|---|---|
| **In Re** | |
| **GLORIA BERNAL URWIN,** | **Bankruptcy Case No. 09-01921-JDP** |
| Debtor. | |

___

### MEMORANDUM OF DECISION

___

**Appearances:**

    Randal J. French, BAUER & FRENCH, Boise, Idaho, Attorney for Debtor.

    Kristen R. Thompson, THOMPSON LAW FIRM, Meridian, Idaho, Pro se, and as Attorney for Thompson Law Firm.

*Introduction*

Chapter 7[1] debtor Gloria Bernal Urwin filed a motion seeking actual and punitive damages attributable to a willful violation of the automatic

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION - 1

stay allegedly committed by one of her creditors, Kristen R. Thompson of the Thompson Law Firm ("Thompson"). Docket No. 39. The motion was fully briefed by the parties, an evidentiary hearing was held on December 1, 2009, and the issues were taken under advisement. Docket No. 58. The Court has considered the evidence and record, the arguments of counsel, and the applicable law, and disposes of the motion below.[2]

*Procedural History*

On July 1, 2009, Debtor filed a chapter 7 petition. Docket No. 1. The docket reflects that the "Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" notice, commonly referred to as the "341 notice," was mailed by the Bankruptcy Noticing Center to creditors listed in Debtor's schedule on July 4, 2009. Docket No. 11.[3] Debtor listed Thompson's law firm as holding an unsecured, nonpriority claim for $70,000 on her Schedule F.

---

[2] This Memorandum contains the Court's findings, conclusions, and reasons for its disposition of the motion. Rules 7052; 9014.

[3] While the Court can not be sure, due to the Independence Day holiday, the Court will presume the 341 notice was actually mailed the following Monday, July 6, 2009.

MEMORANDUM OF DECISION - 2

Docket No. 14. In her statement of financial affairs, Debtor listed a pending lawsuit in Ada County brought by the Thompson firm against "Gloria Urwin's Real Estate, Mike Urwin Enterprises, Mike Urwin Homes, Michael & Gloria Urwin" as case number "CV OC 09-00929". *Id*. The pending action was one to recover sums owed to Thompson and her firm for attorney services. Docket No. 53.

In connection with the state court action, on July 7, 2009, Thompson sent a letter to Ada County district judge Michael E. Wetherell. Docket No. 39, Ex. B. Apparently, prior to Debtor's bankruptcy filing, Thompson had filed a motion seeking a summary judgment against Debtor and others, and a hearing had been held on that motion. Judge Wetherell had ruled in Thompson's favor from the bench, but he declined to enter an order until the parties had an opportunity to settle the case, and to resolve an issue regarding the status of the legal action in connection with the bankruptcy case involving Debtor's husband, Michael Urwin. In her July 7, letter, Thompson requested that Judge Wetherell enter an order consistent with his oral ruling, or in other words, that the court grant

MEMORANDUM OF DECISION - 3

summary judgment against Debtor. She provided a draft order to Judge Wetherell with the letter.

That same day, July 7, 2009, Thompson learned of Debtor's bankruptcy filing. Aff. of Kristen R. Thompson at ¶ 8, Docket No. 54. In response to this information, Thompson stated that she immediately contacted Judge Wetherell's clerk and advised her of the bankruptcy filing. *Id*. at ¶ 9. Nevertheless, on July 13, 2009, the judge entered the order and judgment in favor of Thompson and against Debtor and others for $78,288.39, plus fees and costs. Docket No. 39, Ex. B.

Between July 23 and July 30, 2009, the judgment was apparently recorded in Ada, Canyon, Gem and Valley counties, thereby creating a lien against Debtor's Ada county real property .[4] Docket No. 60. On August 7, 2009, Debtor's bankruptcy counsel informed Thompson by letter that her

---

[4] While the parties did not include copies, the Court infers that the judgments were in fact recorded, as Thompson refers to them in a letter to the Court dated December 3, 2009. Docket No. 60. The record does not show how the judgments came to be recorded. Even so, the Court suspects Thompson played a role in this activity.

MEMORANDUM OF DECISION - 4

actions after July 2, 2009 violated the automatic stay.[5]  Docket No. 39, Ex. D.

On October 23, 2009, Debtor filed the motion to recover actual and punitive damages from Thompson for violating the automatic stay. Thompson responded to the motion on November 20, 2009.  Docket No. 53.  On December 3, 2009, after the hearing on the motion, Thompson wrote the Court a letter in which she indicated that she had filed a "Motion to Discharge without prejudice" Debtor from the order and judgment entered in state court.  Docket No. 59.  In another letter to the Court dated December 10, Thompson indicated that Judge Wetherell entered an order discharging Debtor from the judgment, and the liens had been released.  Docket No. 60.[6]

---

[5] It is unclear why Debtor's counsel utilized the July 2, 2009 date, as the petition was filed, and hence the case was commenced, on July 1, 2009.

[6] While copies of Thompson's letters to the Court were apparently sent to Debtor's bankruptcy counsel, corresponding with the presiding judge is certainly not the preferred method of bringing matters to the attention of the Court in a pending action.  So that the record would include Thompson's letters, the Court directed that they be filed by the Clerk as part of the case docket.

MEMORANDUM OF DECISION - 5

*Analysis and Disposition*

The filing of a bankruptcy petition automatically stays most creditor collection actions against a debtor, and in particular, the continuation of pending legal proceedings against the debtor or property of the debtor's estate.[7]  Here, Thompson's state court law suit against Debtor to collect legal fees from her was automatically stayed on July 1, 2009, the date Debtor filed her bankruptcy petition.

Actions taken in violation of the automatic stay are void.  *Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d 932, 934 (9th Cir. 2009); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992); *In re Christensen*, 98.1 I.B.C.R. 15, 15 (Bankr. D. Idaho 1998).  Moreover, a debtor

---

[7] Specifically, under § 362(a)(1), the automatic stay prohibits:
> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

In addition, § 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate."

MEMORANDUM OF DECISION - 6

may recover damages from a creditor if a stay violation was willful. 11 U.S.C. § 362(k);[8] *Sternberg v. Johnston*, 582 F.3d 1114, 1116 (9th Cir. 2009); *In re Dayley*, 06.1 I.B.C.R. 3, 4 (Bankr. D. Idaho 2006).

Debtor alleges that Thompson's postpetition acts in connection with the pending state court action were willful violations of the stay, and that she has been damaged as a result. Thompson contends that she did not violate the automatic stay, because her actions were prior to or contemporaneous with the filing of the petition, and because she never sought to enforce the judgment against Debtor.

A.  Did Thompson Violate the Automatic Stay?

The Court finds that Thompson took several actions after Debtor filed her bankruptcy petition and the automatic stay was in place. First, she admits she sent a letter to Judge Wetherell, seeking entry of an order and judgment in her favor against Debtor. This act clearly violated the

---

[8] With exceptions not applicable here, § 362(k)(1) provides that "an individual injured by any willful violation of [the § 362(a) stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

MEMORANDUM OF DECISION - 7

stay.

Next, while Thompson apparently promptly called the judge's clerk to inform her of the filing of the bankruptcy petition, Thompson did nothing else to ensure that the state action proceeded no further. This was also a problem. The Ninth Circuit Court of Appeals has unambiguously held that § 362(a) imposes an "affirmative duty" on a collecting creditor to discontinue any legal action once it learns of the bankruptcy filing. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191-92 (9th Cir. 2003). However, the court has made clear that the creditor's duty extends further: a party that has violated the stay must do whatever is necessary to remedy a stay violation. *Sternberg*, 582 F.3d at 1121. In addition, Thompson's duty required her to see to it that the state court action halted, because "[t]he maintenance of an active collection action alone adequately satisfies the statutory prohibition against 'continuation' of judicial actions." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002).

Thompson acted properly to inform the state court about the bankruptcy. However, Thompson was told that her letter of July 7, 2009

MEMORANDUM OF DECISION - 8

had been received, and that the order was being processed. Knowing this, Thompson had a duty to do more. Instead, she took no further action to stop the legal process, electing to leave matters alone. Without taking any further action, Thompson failed to satisfy her affirmative duty to ensure the automatic stay was respected.

Moreover, when the order and judgment were entered in the state court action, Thompson took no affirmative steps to have that judgment set aside. This approach falls short of the Ninth Circuit's standard that a "party violating the automatic stay, through continuing a collection action in a non-bankruptcy forum, must automatically dismiss or stay such proceeding or risk possible sanctions for willful violations pursuant to § 362[k]". *Eskanos & Adler*, 309 F.3d at 1214; *In re Daniels*, 04.4 I.B.C.R. at 155. Thompson further violated the automatic stay by allowing the judgment to be recorded as a lien against Debtor's property.[9]

Although Thompson was specifically made aware of her stay

---

[9] As noted above, § 362(a)(4) prohibits "any act to create, perfect or enforce a lien against the property of the estate." *In re Conceicao*, 331 B.R. 885, 893-94 (9th Cir. BAP 2005).

MEMORANDUM OF DECISION - 9

violation by letter from Debtor's counsel dated August 7, 2009, and through the filing of Debtor's motion on October 23, Thompson did not seek to have Debtor discharged from the state court's order and judgment, nor did Thompson release Debtor's property from the liens, until December 3, 2009, after the hearing on the instant motion. This is an unacceptable response to Thompson's knowledge that Debtor had filed a bankruptcy petition.[10]

B.  Were Thompson's Stay Violations Willful?

A violation of the automatic stay is willful if the creditor acted with knowledge of the automatic stay, and those actions were intentional. *Eskanos & Adler*, 309 F.3d at 1215; *Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 220 (9th Cir. BAP 2006); *In re Wiersma*, 03.1 I.B.C.R. 42, 44 (Bankr. D. Idaho 2003). "Knowledge of the bankruptcy filing is the legal equivalent

---

[10] In *Eskanos & Adler*, the court concluded that "Eskanos demonstrated no indication that it was attempting to move expeditiously to cure the automatic stay violation." *Id*. at 1215. In that case, the creditor had waited 23 days to act to dismiss the state court collection action against the debtor. Because here Thompson waited much longer to act to remedy her stay violations, the Court also confidently finds that the creditor did not move expeditiously to cure the violations.

MEMORANDUM OF DECISION - 10

of knowledge of the automatic stay." *In re Ozenne*, 337 B.R. at 220 (citing *In re Ramirez*, 183 B.R. 583, 589 (9th Cir. BAP 1995)).

Thompson alleges she sent the letter to Judge Wetherell seeking entry of a judgment on July 7, before she received the 341 notice and knew Debtor had filed for bankruptcy. Indeed, she testified in her affidavit that she mailed the letter and received notice of the bankruptcy filing on the same day. Since there is insufficient proof to the contrary, the Court assumes Thompson lacked knowledge of the bankruptcy at the time she mailed the letter to Judge Wetherell.[11]

All of Thompson's other acts were intentional and therefore willful. After learning of Debtor's bankruptcy filing, Thompson elected to take no formal action to dismiss the state court law suit against Debtor, nor even to

---

[11] Obviously, Thompson's version of the facts is fraught with problems. The letter to the state court judge is dated and was presumably sent on July 7. However, Thompson testified that when she became aware of Debtor's bankruptcy filing, she called the state court clerk the same day. The clerk informed her that Thompson's letter had been received and was being processed. It is highly doubtful that Thompson's letter to the judge was mailed and received by the state court on the same day. Even so, for present purposes, the Court gives Thompson the benefit of the doubt that she learned of the bankruptcy filing after the letter was mailed.

MEMORANDUM OF DECISION - 11

stop the "processing" of her request for entry of a judgment against Debtor. Though she was aware that a judgment was entered, and apparently caused the judgment to be recorded in several counties, Thompson did nothing to have the judgment set aside and liens released until after Debtor took legal action against her in this Court.

C. Damages.

Once a court determines that a willful violation of the automatic stay has occurred, an award of actual damages is mandatory. *In re Wiersma*, 03.1 I.B.C.R. at 44. However, the amount of actual damages must be proven. *Id*. (citing *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 116 (9th Cir. 1992); *In re Roman*, 283 B.R. 1, 8 (9th Cir. BAP 2002)). Debtor bears the burden of such proof. *In re Daniels*, 04.4 I.B.C.R. at 157 (citing *In re Jacobson*, 03.2 I.B.C.R. 119, 121 (Bankr. D. Idaho 2003)).

Debtor seeks actual damages in the amount of $500. Debtor contends she has incurred actual damages for:

> time spent reviewing statements, providing them
> to her counsel, and phone conversations with
> Thompson and her counsel. She has further
> actual damages in the time spent pursuing this

MEMORANDUM OF DECISION - 12

>           Motion, attorney fees, and the emotional distress
>           of facing vindictive and vituperative collection
>           attempts from Thompson.

Document No. 39.

Debtor did not testify at the hearing, nor did her counsel. Indeed, the record contains no affidavits or other proof addressing Debtor's losses or expenses. The record supports the inference that at some point, when Debtor became aware of the entry of the state court judgment against her, she conferred with her counsel, who wrote a letter to Thompson to advise her of the stay violations and demand that she cease her activities. Debtor's counsel also filed the instant motion, briefed the issues, and he attended the December 1, 2009 hearing.

The burden rests squarely with Debtor to prove her actual damages, and the Court can not speculate as to the amount of costs and fees incurred. *See In re Risner*, 04.4 I.B.C.R. 172, 174-175 (Bankr. D. Idaho 2004) ("The *actual* time spent must be established, through competent evidence in each case and *viz* each creditor alleged to have violated § 362(a), and that time and the fees charged must be shown to be reasonable")

MEMORANDUM OF DECISION - 13

(emphasis in original).  However, in this case, the Court can, based upon its experience, estimate the legal fees incurred by Debtor to remedy Thompson's stay violations based upon pleadings in the record and the time spent by counsel during the hearing.  The Court concludes Debtor incurred $2,100[12] in legal costs to obtain relief from the state court judgment and liens.[13]

---

[12]  The Court estimates that 12 hours of attorney time was reasonably expended by Debtor's counsel in dealing with Thompson's stay violations, including consulting with Debtor, and filing, briefing and attending the hearing on the motion.  The Court values counsel's time at $175 per hour, which the Court finds to be a reasonable rate for the services provided in this case .

[13]  While § 362(k) provides that an individual harmed by a willful stay violation may recover "actual damages, including costs and attorney's fees" from the violator, in *Sternberg,* 582 F.3d at 1123-1124, the Ninth Circuit recently held that not all of the legal costs incurred by a debtor in prosecuting the action against a violating creditor are recoverable.  The Court stated that, in assessing damages, the Court must compensate the debtor for "the injury resulting from the stay violation itself.  Once the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for 'actual damages' under § 362(k)(1)." *Id.* at 1123.  Instead, as to legal fees, in awarding damages for a stay violation, the Court should focus on "which fees are properly allocable to efforts to enforce the automatic stay and prevent enforcement of the state court order that violated the stay." *Id*. at 1124.  Here, Thompson did not properly act to remedy her stay violations until after Debtor sought relief through this motion.  Therefore, all of Debtor's attorneys fees are allocable to her efforts to obtain relief from the offensive state court judgment and liens.

MEMORANDUM OF DECISION - 14

In addition, Debtor seeks damages for emotional distress caused by Thompson's violation of the automatic stay. In order to qualify for such damages, a debtor must "(1) establish that he suffered significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from anxiety and pressures inherent in the bankruptcy process)." *In re Gorringe*, 348 B.R. 789, 794 (Bankr.D.Idaho 2006) (quoting *Dawson v. Washington Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004).

The record before the Court contains no persuasive evidence to support Debtor's claim for emotional distress damages, and falls well short of the mark. Accordingly, the Court awards no damages for emotional distress.

While Thompson is an attorney and presumably she should appreciate her duty to properly react to a bankruptcy filing by Debtor, the Court declines the opportunity to impose punitive damages in this case. While Thompson's actions are regrettable, based upon her post-hearing

MEMORANDUM OF DECISION - 15

actions to set aside the judgment and release the liens, the Court is inclined to believe she now understands the scope and impact of the automatic stay such that she will more pro-actively respond to her future encounters with debtors in bankruptcy cases.

*Conclusion*

The Court concludes that Thompson willfully violated the automatic stay. Debtor incurred significant legal expenses as actual damages to remedy the stay violation. A separate order will therefore be entered granting Debtor's motion and awarding her $2,100 in actual damages, and denying Debtor's request for additional damages, including her request for emotional distress or punitive damages under § 362(k).

Dated: February 2, 2010

_(signature)_

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 16